In re Robert Leon HUGHES, Debtor.

Robert Leon HUGHES,
Plaintiff–Appellant,

v.

Jerome LIEBERMAN,
Defendant–Appellee.

No. 88–5202.

United States Court of Appeals,
Eleventh Circuit.

May 17, 1989.

---

7. We conclude that the other claims raised by appellants are meritless, although we do not discuss them in this opinion.

Bruce Alexander, Miami, Fla., for plaintiff-appellant.

Frank M. Marks, Daniel W. Mones, Daniel Mones, P.A., Miami, Fla., for defendant-appellee.

Before TJOFLAT and JOHNSON, Circuit Judges, and BROWN *, Senior Circuit Judge.

JOHN R. BROWN, Senior Circuit Judge:

Robert Leon Hughes, debtor in a Chapter 7 bankruptcy proceeding, appeals a district court order affirming the bankruptcy court's denial of discharge, 11 U.S.C. § 727(a)(3) and (5).[1] The bankruptcy judge denied Hughes' motion for relief from final judgment pursuant to Bankruptcy Rule 9024 and Fed.R.Civ.P. 60(b)[2] on the grounds that Hughes failed to prove the existence of newly discovered evidence or excusable neglect. Largely because of our longstanding opinion in *Goff v. Russell,* 495 F.2d 199 (5th Cir.1974), reflecting equitable concerns which permeate the basic objectives underlying the hope of bankruptcy—affording a bankrupt a new chance—we conclude Hughes should have a further opportunity to submit adequate, organized financial records to ascertain whether denial of discharge is appropriate. Consequently, we reverse and remand to the district court with instructions that the bankruptcy judge afford Hughes a specific period of time in which to present in an orderly way all necessary records, adequately organized and accompanied by appropriate written formal conclusions by an acceptable accountant by which the bankruptcy court can determine the true state of the bankrupt's business affairs.

### *Mad Money*

Hughes, the individual debtor, was a professional numismatist. He formed a joint venture, Turnberry Numismatic Investment Corporation (TNIC) with Jerome Lieberman and Myer Morse for the purpose of buying and selling coins. Hughes' role in TNIC was to handle coin purchases and sales.

TNIC's initial capitalization consisted of $12,000 from each of the principals—Hughes, Lieberman, Morse and one other person. Additional funds were required to acquire coins and were obtained through loans of $150,000 and $200,000 personally guaranteed by the stockholders.

Hughes' financial troubles apparently arose from ventures separate and independent from TNIC. However, confusion

---

* Honorable John R. Brown, Senior U.S. Circuit Judge for the Fifth Circuit, sitting by designation.

1. Section 727(a) provides in pertinent part:
   (a) The court shall grant the debtor a discharge, unless

   . . . .
   (3) the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case;

   . . . .
   (5) the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities. . . .

2. Bankruptcy Rule 9024 incorporates Fed.R.Civ. P. 60(b).

arises with respect to understanding both the flow of Hughes' personal assets into TNIC (primarily in the form of unspecified sums paid to Morse, TNIC's lead financial backer) and the flow of TNIC's coin inventory in and out of Hughes' hands.

One of Hughes' partners, Lieberman, formally objected to Hughes' discharge in bankruptcy for failure to fulfill the record-keeping requirements of 11 U.S.C. § 727(a)(3) and his unsatisfactory explanation for a loss of TNIC assets, specifically cash and coin inventory of the corporation. To meet this objection Hughes simply brought into court a jumbled mass of reports, miscellaneous papers, invoices and other raw data urging that when properly studied and organized these would adequately reflect the status of affairs of the bankrupt and his handling of TNIC assets and transfers of his personal assets to TNIC. Obviously the bankruptcy judge did not have to accept this sloppy compliance with the § 727(a)(3) bookkeeping standards and the § 727(a)(5) obligation to provide a satisfactory explanation for a loss or deficiency of assets.

Following the district court's affirmance of the denial of discharge, Hughes filed a Bankruptcy Rule 9024/Fed.R.Civ.P. 60(b) motion for relief from final judgment based on TNIC cash receipt and disbursement journals which had been in the custody of a California C.P.A. who had performed work for TNIC when the corporation was active. The bankruptcy judge's denial of the Rule 60(b) motion was affirmed by the district court, and Hughes now appeals to this Court.

### A Place for Equity in Bankruptcy

Without examining, or deciding, in detail whether and to what extent the decision is affected by the promulgation of Bankruptcy Rule 9024 and the extent, if any, that the matter is within the catch-all provision of comparable Rule 60(b)(6), we think that it is appropriate to follow what we long ago did in *Goff*. There we said: "considering all the facts and circumstances disclosed by the record, we conclude that it would be appropriate to remand the case to ... allow

the bankrupt, at his own expense, a reasonable time in which to place his books and records in a condition that will substantially reflect his financial status." *Goff v. Russell*, 495 F.2d at 202. We conclude, therefore, that under *Goff* the bankruptcy judge should afford Hughes a further opportunity to avoid denial of discharge under § 727(a)(3) and (5) by presenting additional documents and records to the bankruptcy judge.[3]

### No Tow Sacks

We emphasize that Hughes may not simply place tow sacks of records before the bankruptcy judge and request the judge to sift through the documents and attempt to reconstruct the flow of the debtor's assets. Rather, additional respite is conditioned on the requirement that Hughes at his own (not the bankruptcy estate's) expense present all records in an orderly manner, completely organized with an appropriate accountant's explanation.

REVERSED AND REMANDED FOR PROCEEDINGS CONSISTENT WITH THIS OPINION.

---

3. There is no basis to the contention that the      bankruptcy judge should be recused.