**In re Donald Ray METZ, Debtor.**

**Laverne AMIDEI, Plaintiff,**

v.

**Donald Ray METZ, Defendant.**

**Bankruptcy No. 91–06639–9p7.**
**Adv. No. 91–552.**

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

Feb. 10, 1993.

Louis X. Amato, Naples, FL, for plaintiff.

Donald Ray Metz, pro se.

Diane L. Jensen, Fort Myers, FL, trustee.

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND MEMORANDUM OPINION

ALEXANDER L. PASKAY, Chief Judge.

THIS is a Chapter 7 liquidation case and the matter under consideration is an adversary proceeding filed by Laverne Amidei (Amidei) requesting to deny the discharge of Donald Ray Metz (Debtor) pursuant to 11 U.S.C. § 727(a)(2) and (a)(4)(A).

Count I of the complaint alleges that the Debtor knowingly and fraudulently made false oaths in connection with this case by not disclosing his interests in certain assets on his Schedules and Statement of Financial Affairs. Count II alleges that the Debtor, with intent to hinder, delay or defraud the Trustee, made post-petition transfers of assets. The pertinent facts established by the record and at the final evidentiary hearing are as follows:

The Debtor filed his petition for relief pursuant to Chapter 7 of the Bankruptcy Code on May 21, 1991. Subsequently the Debtor filed his Statement of Financial Affairs and Schedules of Assets and Liabilities, which were signed by the Debtor under penalty of perjury. It is without dispute that the Debtor failed to disclose in the Statement of Financial Affairs a series of transfers which occurred in the year prior to the filing of the bankruptcy.

The more significant non-disclosed transfers included the sale of real property in an industrial park to John Caird Investments, U.S., Inc., loaning $68,445.00 to Ed Clemente, the transfer of $50,327.29 to Gulfcoast Vending, paying off a $38,281.30 mortgage and then subsequently selling the real property, purchasing a $36,000 lot and paying in full $98,500.00 for the construction of a home on that lot which was then homesteaded, selling a condominium with the proceeds applied to the homestead, and paying $27,500.00 to the Internal Revenue Service (IRS). A series of smaller, undisclosed transfers also occurred within one year of the filing of the bankruptcy petition.

Post-petition, the Debtor acquired a $6,000.00 cash bond for a pending criminal matter and eventually transferred the proceeds to his criminal counsel. This undisclosed transfer occurred despite the fact that the bond was property of the estate pursuant to 28 U.S.C. §§ 327–29.

The Debtor confessed to many of these transfers during the Section 341 meeting held on July 2, 1991, with the remaining non-disclosures surfacing later that month in three subsequently filed Amendments to his Schedules. The Debtor also filed a fourth and final Amendment on October 10, 1991 listing an interest in a parcel of real property located in Tennessee.

At the Final Evidentiary Hearing Debtor's counsel testified that he met with the Debtor between six and ten times prior to the filing of the petition. The Debtor testified that during one of his many legal consultations, his attorney handed him paperwork and told him to "fill these papers out to the best of my ability." Although being an educated man and repeatedly discussing the filing with his attorney, the Debtor testified that he did not understand the meaning of "real property" and thought the term "transfer" applied only to "stocks and bonds." During the Final Evidentiary Hearing, the Debtor frequently stated that these definitional misunderstandings were the reason for his non-disclosure.

Upon these facts, Amidei contends that the Debtor is not entitled to receive his discharge. Amidei asserts that the failure to disclose the existence and transfer of assets are sufficient to deny the Debtor his discharge pursuant to § 727(a)(2) and (a)(4) of the Bankruptcy Code. These subsections of § 727 read in pertinent part:

§ 727. Discharge

(a) The court shall grant the debtor a discharge, unless—

. . . . .

(2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody

of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed—

(A) property of the debtor, within one year before the date of the filing of the petition; or

(B) property of the estate, after the date of the filing of the petition;

.    .    .    .    .

(4) the debtor knowingly and fraudulently, in or in connection with the case—

(A) made a false oath or account;

.    .    .    .    .

■ The party objecting to the Debtor's discharge has the burden of proving by a mere preponderance of evidence that the Debtor's discharge should be denied. *Grogan v. Garner*, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). To prevail on an objection to discharge pursuant to § 727(a)(4)(A) the Plaintiff must establish that the debtor knowingly and fraudulently made the false oath and that this oath pertained to a material fact. *In re Ingersoll*, 124 B.R. 116 (Bankr.M.D.Fla.1991). While it is difficult to prove that a false oath was knowingly made, an inference of such intent can be drawn from circumstances surrounding the debtor. *In re Sklarkin*, 69 B.R. 949 (Bankr.S.D.Fla. 1987). The Debtor's numerous omissions in his Statement of Financial Affairs and Schedules, taken together, may constitute a pattern demonstrating a reckless disregard for the truth. *In re Clawson*, 119 B.R. 851 (Bankr.M.D.Fla.1990). This reckless disregard for the truth is widely recognized as the equivalent to fraudulent intent. *In re Sapru*, 127 B.R. 306 (Bankr.E.D.N.Y.1991).

■ This Court is satisfied that the record more than sufficiently establishes a pattern of omissions which indicates, at a minimum, a reckless disregard for the truth. The Debtor filed these falsehoods while represented by counsel and clearly understood the signing of the Statement of Financial Affairs and the Schedules was under the penalty of perjury. Also, the Debtor admitted these falsehoods and omissions at the Final Evidentiary Hearing. Unquestionably, the record supports the denial of discharge pursuant to § 727(a)(4)(A).

■ The Plaintiff also seeks a denial of discharge pursuant to § 727(a)(2) for fraudulent concealment or transfer of property. To prevail on this count, the Plaintiff must establish that:

(1) A transfer of property occurred;

(2) It was the property of the Debtor, or property of the estate;

(3) The transfer of property of the Debtor occurred within one year of the date of filing the petition, or if post-petition, property of the estate;

(4) The defendant had at the time of the transfer, the intent to hinder, delay or defraud a creditor.

*In re Ingersoll, supra.* The undisputed record indicates the Debtor transferred substantially valued property both pre- and post-petition. The only question is that of intent. Again, actual intent may be proven from circumstantial evidence or inferred by a court when the debtor fails to disclose assets in his Statement of Assets and Liabilities and/or has given false answers in his Statement of Financial Affairs. *In re Sklarkin, supra.* The Court is satisfied that the record establishes the inference of actual intent by the conduct of the Debtor. The numerous falsehoods in his Statement of Financial Affairs, the pre-petition transfer of substantially valued property and the post-petition transfer of a $6,000.00 bond establish the necessary intent of the Debtor to hinder, delay or defraud a creditor. Pursuant to 11 U.S.C. 727(a)(2) the Debtor's discharge is denied.

A separate Final Judgment will be entered in accordance with the foregoing.

DONE AND ORDERED.